**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**IRIS R. TUBENS,**

      **Plaintiff,**

v.                                                                                               Case No: 6:20-cv-64-LRH

**COMMISSIONER OF SOCIAL**
**SECURITY,**

      **Defendant.**

**MEMORANDUM OF DECISION**

      Iris R. Tubens ("Claimant") appeals the Commissioner of Social Security's ("Commissioner") final decision denying her applications for disability benefits. (Doc. 1). The Claimant raises several arguments challenging the Commissioner's final decision and, based on those arguments, requests that the matter be reversed and remanded for further proceedings. (Doc. 25 at 23-30, 42-49, 53-54). The Commissioner argues that the Administrative Law Judge ("ALJ") committed no legal error and that her decision is supported by substantial evidence and should be affirmed. (*Id*. at 30-42, 49-54).[1] Upon review of the record, the Court finds the Commissioner's final decision is due to be **AFFIRMED**.

**I.     Procedural History**

      This case stems from the Claimant's March 2, 2016 applications for disability insurance benefits and supplemental security income, in which she alleged a disability onset date of December

---

[1] After the parties filed their joint memorandum, the Claimant filed a supplemental memorandum in reply to several issues the Commissioner raised in the joint memorandum. (Doc. 26). The scheduling order prohibits replies absent leave of court. (*See* Doc. 17 at 2, n.1). The Claimant neither requested nor was granted leave to file a reply. Accordingly, the Court has not considered the unauthorized reply in resolving this matter.

31, 2015. (R. 209-22). The applications were denied on initial review and on reconsideration. The matter then proceeded before an ALJ, who held a hearing on November 2, 2018. (R. 33-76). The Claimant and her representative attended the hearing. (*Id*.). On December 5, 2018, the ALJ entered a decision denying the Claimant's applications for disability benefits. (R. 15-26). The Claimant requested review of the ALJ's decision, but the Appeals Council denied her request. (R. 1-3). This appeal followed.

**II.    The ALJ's Decision**

The ALJ performed the five-step evaluation process set forth in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4) in reaching her decision.[2] First, the ALJ found the Claimant met the insured status requirements of the Social Security Act through March 31, 2019, and that she has not engaged in substantial gainful activity since the alleged onset date. (R. 17). The ALJ next found that the Claimant suffers from the following severe impairments: fibromyalgia; left shoulder impingement; left Achilles tendinitis; and, seizure-like disorder. (R. 18). The ALJ also found that the Claimant suffers from non-severe impairments of anxiety and depression. (R. 18-19). The ALJ concluded that none of the Claimant's impairments, individually or in combination, met or medically equaled any listed impairment. (R. 19-20).

The ALJ next found that the Claimant has the residual functional capacity ("RFC") to

---

[2] An individual claiming Social Security disability benefits must prove that he or she is disabled. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). The five steps in a disability determination include: (1) whether the claimant is performing substantial, gainful activity; (2) whether the claimant's impairments are severe; (3) whether the severe impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the claimant can return to his or her past relevant work; and (5) based on the claimant's age, education, and work experience, whether he or she could perform other work that exists in the national economy. *See generally Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920.

perform light work as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b),[3] with the following additional limitations:

> [S]he can stand and/or walk for 45 minutes then sit for up to 15 minutes before returning to a standing position. The change in position would not take her off task. The claimant could never climb ladders, ropes, or scaffolds. She could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She could occasionally reach overhead with the left upper extremity. She could occasionally operate foot controls. The claimant could never work around unprotected heights or dangerous moving machinery.

(R. 20). In light of this RFC, the ALJ found that the Claimant can perform her past relevant work as a telephone order clerk. (R. 24). In addition, the ALJ found the Claimant can perform other work in the national economy, including work as a survey worker, information clerk, and fundraiser. (R. 24-25). Accordingly, the ALJ concluded that the Claimant was not disabled between her alleged onset date (December 31, 2015) through the date of the decision (December 5, 2018). (R. 25-26).

### III. Standard of Review

The scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's findings of fact are supported by substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The Commissioner's findings of fact are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g), which is defined as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Lewis v. Callahan*, 125 F.3d

---

[3] Light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

1436, 1440 (11th Cir. 1997). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision, when determining whether the decision is supported by substantial evidence. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm it if the decision is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

**IV. Analysis**

The Claimant raises two arguments on appeal: 1) the ALJ improperly weighed opinions from an examining physician, Dr. Donna Lester, and a non-examining physician, Dr. P.S. Krishnamurthy; and, 2) the ALJ improperly evaluated the Claimant's credibility. (Doc. 25 at 23-30, 42-49). The Court will address each argument in turn.

**A. Opinion Evidence**

The Claimant contends that the ALJ did not "present sufficient rationale" to give more weight to Dr. Krishnamurthy's opinion over that of Dr. Lester. (Doc. 25 at 23-30). While the Court agrees that the ALJ erred in weighing Dr. Lester's opinion, the error was harmless. Further, to the extent the Claimant is separately challenging the weight assigned to Dr. Krishnamurthy's opinion, the Court finds no error.

The ALJ is tasked with assessing a claimant's RFC and ability to perform past relevant work. *Phillips*, 357 F.3d at 1238. The RFC "is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis*, 125 F.3d at 1440. In determining a claimant's RFC, the ALJ must consider all relevant evidence, including the medical opinions of treating, examining, and non-examining medical sources, as well as the opinions of

other sources. *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also Rosario v. Comm'r of Soc. Sec.*, 490 F. App'x 192, 194 (11th Cir. 2012).[4]

The ALJ must consider a number of factors in determining how much weight to give each medical opinion, including: 1) whether the physician has examined the claimant; 2) the length, nature, and extent of the physician's relationship with the claimant; 3) the medical evidence and explanation supporting the physician's opinion; 4) how consistent the physician's opinion is with the record as a whole; and 5) the physician's specialization. 20 C.F.R. §§ 404.1527(c), 416.927(c).

A treating physician's opinion must be given controlling weight, unless good cause is shown to the contrary. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (giving controlling weight to the treating physician's opinion unless it is inconsistent with other substantial evidence); *see also Winschel*, 631 F.3d at 1179. The opinion of an examining physician, on the other hand, is generally not entitled to any special deference. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (citing *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986)). In addition, "[t]he opinions of nonexamining, reviewing physicians, . . . when contrary to those of the examining physicians, are entitled to little weight, and standing alone do not constitute substantial evidence." *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987). The ALJ, however, may rely on a non-examining physician's opinion where it is consistent with the medical and opinion evidence. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (holding that the ALJ did not err in relying on a consulting physician's opinion where it was consistent with the medical evidence and findings of the examining physician).

---

[4] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority. *See* 11th Cir. R. 36-2.

Regardless of whether the opinion is from a treating, examining, or non-examining source, the ALJ must state the weight assigned to each medical opinion, and articulate the reasons supporting the weight assigned. *Winschel*, 631 F.3d at 1179. The failure to state the weight with particularity or articulate the reasons in support of the assigned weight prohibits the Court from determining whether the ALJ's ultimate decision is rational and supported by substantial evidence. *Id*.

**1. Dr. Lester**

Dr. Lester performed a one-time examination of the Claimant on April 23, 2016. (R. 394-96). The physical examination was largely unremarkable with the only exceptions being tenderness over all trigger points, flat affect, and anxious mood. (R. 395-96). Based on the Claimant's medical history and her examination, Dr. Lester opined that the Claimant can sit for more than 2/3 of an eight-hour work day (*i.e.*, continuously), and stand/walk for up to 1/3 of an eight-hour workday (*i.e.*, occasionally). (R. 396). Dr. Lester also opined that the Claimant has a limited ability to bend and stoop. (*Id*.).

The ALJ considered Dr. Lester's opinion and gave it some weight, explaining:

> She opined the claimant could stand and walk occasionally in an eight hour workday, but could sit continuously in an eight hour workday. She opined the claimant had a limited ability to bend or stoop (Exhibit 3F). Dr. Lester examined the claimant on a single occasion and did not otherwise review the medical evidence of record. Her opinion was generally consistent with the claimant's presentation during the consultative examination, but the record overall suggests the claimant required additional work-related restrictions as set forth above.

(R. 24).[5] The ALJ provided no other reasoning in support of the weight assigned to Dr. Lester's opinion. (*See* R. 15-26).

---

[5] The ALJ also summarized Dr. Lester's opinion earlier in the decision but did not articulate any reasons for the weight she later assigned to the opinion. (R. 21-22).

The ALJ's RFC determination is consistent with Dr. Lester's opinion with one exception; it limits the Claimant to light work, which would not be capable based on Dr. Lester's opinion that the Claimant can occasionally stand/walk during an eight-hour workday. Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *6 (1983) ("[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.").[6]

The Claimant's argument on this point is somewhat confusing. It appears that the Claimant is arguing that the ALJ did not provide sufficient rationale for assigning Dr. Lester's opinion "some weight," when compared to the ALJ's assignment of "great weight" to the opinion of Dr. Krishnamurthy. (Doc. 25 at 25-26). This is a conflation of two separate issues: (1) the weight assigned to Dr. Lester's opinion; and (2) the weight assigned to Dr. Krishnamurthy's opinion. The Court will address each issue separately.

With respect to Dr. Lester, it appears the only reason the ALJ provided for rejecting Dr. Lester's opinion concerning the Claimant's ability to stand/walk was the fact that she examined the Claimant once and did not review any of the Claimant's medical records. This reason, as the Claimant argues, does not explain why the ALJ disagreed with the actual stand/walk limitation endorsed by Dr. Lester. The Court therefore cannot meaningfully determine whether the ALJ's rejection of the stand/walk limitation is supported by substantial evidence.

The Commissioner points to evidence that he claims supports the weight assigned to Dr. Lester's opinion. (Doc. 25 at 33-37). The ALJ, however, did not cite to that evidence in support of the weight assigned to the opinion. (*See* R. 24). The Court is therefore not permitted to consider

---

[6] An SSR is an "agency ruling[ ] published under the authority of the Commissioner of Social Security" and is "binding on all components of the Administration." *Sullivan v. Zebley*, 493 U.S. 521, 530 n.9 (1990) (internal quotation marks omitted). Although the Court is not bound by SSRs, they are afforded deference. *See Fair v. Shalala*, 37 F.3d 1466, 1469 (11th Cir. 1994).

the Commissioner's *post hoc* rationalizations in evaluating the ALJ's decision. *See Dempsey v. Comm'r of Soc. Sec.*, 454 F. App'x 729, 733 (11th Cir. 2011) (A court will not affirm based on a post hoc rationale that "might have supported the ALJ's conclusion.") (quoting *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984)). To make such assumptions would necessarily require the Court to reweigh the evidence, which is prohibited. *See Phillips*, 357 F.3d at 1240 n.8 (stating that the district court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'").

However, this is not the end of the discussion. The Commissioner alternatively argues that any error in weighing Dr. Lester's opinion is harmless, because if the ALJ included the stand/walk limitation into the RFC determination she would still be able to perform her past-relevant work as a telephone order clerk. (Doc. 25 at 31-32). On this point, the Court agrees. Dr. Lester opined that the Claimant can stand/walk for up to 1/3 of an eight-hour workday. (R. 396). If this limitation is factored into the RFC determination (and nothing else is changed) the Claimant would be limited to sedentary work, which only requires occasional standing/walking. SSR 83-10, 1983 WL 31251, at *5 ("Jobs are sedentary if walking and standing are required occasionally[.]"). The applicable social security ruling defines occasional as "occurring from very little up to one-third of the time," which is consistent with Dr. Lester's definition of occasional. *Id*. Therefore, even if the ALJ included Dr. Lester's stand/walk limitation into her RFC determination it would not affect her determination that the Claimant can perform her past relevant work as a telephone order clerk, which the Dictionary of Occupational Titles defines as sedentary work. Dictionary of Occupational Titles 209.567-014, 1991 WL 671794 (1991). Accordingly, the ALJ's error with respect to Dr. Lester's opinion is harmless because it would not change her ultimate determination that the Claimant is not disabled. *See Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877 (11th Cir.

2013) ("[w]hen ... an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand"); *see also Bayes v. Comm'r of Soc. Sec.*, No. 6:16-cv-1976-Orl-28DCI, 2017 WL 5565274, at *5 (M.D. Fla. Oct. 27, 2017) (finding harmless error under similar circumstances).

### 2. Dr. Krishnamurthy

Dr. Krishnamurthy, a non-examining state agency consultant, reviewed the Claimant's medical records through May 10, 2016, including Dr. Lester's examination report and opinion. (R. 116-18). Based on that review, on September 7, 2016, Dr. Krishnamurthy opined that the Claimant has the ability to: frequently carry/lift ten (10) pounds; occasionally carry/lift twenty (20) pounds; sit for about six (6) hours in an eight-hour workday; and stand/walk for about six (6) hours in an eight-hour workday. (R. 116). In addition to these limitations, which are consistent with light work, *see* 20 C.F.R. §§ 404.1567(b), 416.967(b); SSR 83-10, 1983 WL 31251, at *6, Dr. Krishnamurthy also opined that the Claimant can occasionally reach overhead with her left arm. (R. 117).

The ALJ considered and weighed Dr. Krishnamurthy's opinion, explaining:

> The record overall continued to provide support for the opinion of state agency consultant Dr. Krishnamurthy. Additional treatment notes were admitted to the record after Dr. Krishnamurthy performed his review, but these additional treatment notes do not show meaningful change or deterioration in the claimant's functioning. As described above, the claimant's symptoms remained stable. She continued to present with tenderness and limited range of motion in the left shoulder and throughout the spine. Her strength remained full, with the exception of one examination showing a grip strength of 4/5, which was not repeated elsewhere. She was not described as having difficulty ambulating at any point, though recent physical therapy examination did document unspecified gait abnormalities. Looking at the medical evidence of record in its entirety, it is largely consistent with the treatment notes Dr. Krishnamurthy was able to review. He was also familiar with program rules and evidentiary requirements, though he did not treat or examine the claimant. No treating provider opined that the claimant required additional or more restrictive work-related exertional limitations. More recently, the claimant did develop seizure-like symptoms. Dr. Mazo-Mayorquin completed a seizure residual

>    functional capacity questionnaire, where he opined that the claimant had seizure like symptoms that involved "jerky movements" of her extremities and periods where she would "space out." He checked off that the claimant would not need more supervision than an unimpaired person, that she could not work at heights, that she could not work with power machines that required an alert operator, that she could operate a motor vehicle, and that she could take a bus alone. These limitations were incorporated into the residual functional capacity, which was otherwise based upon the opinion of Dr. Krishnamurthy (Exhibit 23F). Dr. Mazo-Mayorquin's opinion was consistent with the treatment notes and evidence of record in its entirety concerning the claimant's seizure disorder and was given great weight. Dr. Krishnamurthy's opinion was also given great weight as it was consistent with and supported by the evidence of record in its totality.

(R. 23-24).

The Claimant argues that the ALJ erred by assigning great weight to Dr. Krishnamurthy's opinion because he neither examined the Claimant nor did he review subsequent medical records from the relevant period that show a change/deterioration in her condition. (Doc. 25 at 27-29). The Court disagrees. The ALJ was free to rely on Dr. Krishnamurthy's opinion where it was consistent with the evidence of record. *Crawford*, 363 F.3d at 1160. The ALJ explained in detail how Dr. Krishnamurthy's opinion was consistent with the evidence of record, including evidence that post-dated Krishnamurthy's opinion (some of which Dr. Lester did not have an opportunity to review). Specifically, the ALJ explained that subsequent medical records, while continuing to show symptoms stemming from the Claimant's left shoulder impairment and fibromyalgia, showed, with only a few exceptions, that she had full strength in her extremities and no difficulty ambulating. (R. 23). This finding is supported by substantial evidence (*See, e.g.*, R. 463, 474, 477, 486, 538, 543, 672) and supports the ALJ's decision to assign Dr. Krishnamurthy's opinion great weight.

The ALJ also considered whether Dr. Krishnamurthy's opinion was affected by subsequent medical evidence, finding that much of the Claimant's subsequent medical records did not show a "meaningful change or deterioration in the claimant's functioning." (R. 23). The Claimant takes issue with this conclusion, arguing that records post-dating Dr. Krishnamurthy's opinion show that

her overall condition deteriorated. (Doc. 25 at 27-29). In support, the Claimant cites to medical records post-dating Dr. Krishnamurthy's opinion that, according to her, show the persistence of her fibromyalgia and new impairments affecting her hands and feet. (*Id*.). This evidence, however, does not show that the limitations identified by Dr. Krishnamurthy worsened.

First, the evidence concerning the Claimant's fibromyalgia has remained relatively consistent throughout the relevant period, with repeated findings of multiple trigger points and pain commonly associated with fibromyalgia. (*See, e.g.*, R. 395 (Dr. Lester's April 23, 2016 examination report document tenderness over all trigger points), 474 (treatment note from April 28, 2017 documenting multiple trigger points)). The Claimant has therefore not shown that her fibromyalgia worsened or caused additional functional limitations beyond those found by Dr. Krishnamurthy.

Second, while the Claimant was diagnosed with additional impairments after Dr. Krishnamurthy rendered his opinion, including carpal tunnel syndrome and Achilles tendonitis (*See, e.g.*, R. 462-65, 665-66), the presence of those impairments do not, in and of themselves, show that the Claimant suffered from additional limitations. (*See, e.g.*, R. 458-65, 657-66); *see also Moore*, 405 F.3d at 1213 n.6 ("the mere existence of . . . impairments does not reveal the extent to which they limit [a claimant's] ability to work . . ."). Further, the physicians and therapists who treated these impairments did not offer any opinions or statements that directly contradict the limitations contained in Dr. Krishnamurthy's opinion.[7] For these reasons, the Court finds the ALJ's

---

[7] The Claimant points to two pieces of evidence, which she claims show greater limitations than those contained in Dr. Krishnamurthy's opinion. (Doc. 25 at 28 (citing R. 458), 29 (citing R. 653)). The first comes from Dr. Edward W. St. Mary, who treated the Claimant's carpal tunnel syndrome. Dr. St. Mary stated that the Claimant "may . . . not [be] capable of doing the type of work that she is doing now without pain. The options are really up to her." (R. 458). This speculative statement does not undermine Dr. Krishnamurthy's opinion, because nothing in the statement directly contradicts the limitations contained in Dr. Krishnamurthy's opinion. Further,

determination that much of the medical evidence post-dating Dr. Krishnamurthy's opinion did not show a "meaningful change or deterioration in the claimant's functioning" is supported by substantial evidence.

Finally, the ALJ did not, as the Claimant seems to suggest, rigidly rely on Dr. Krishnamurthy's opinion in formulating her RFC determination. The ALJ considered and credited other evidence, including an opinion from Dr. J. Anthony Mazo-Mayorquin concerning the limitations caused by the Claimant's seizure-like disorder and the Claimant's own testimony, which led to the inclusion of a type of sit/stand option in the RFC determination. (R. 21, 23-24). The ALJ therefore did not commit error by relying on Dr. Krishnamurthy's opinion in formulating the RFC determination. *See McMillan v. Astrue*, No. 3:08-cv-609-J-HTS, 2009 WL 651144, at *3 (M.D. Fla. Mar. 12, 2009) ("[A]n ALJ errs when his or her opinion is 'dependent *solely* on the report of [a nonexamining] consultant[.]'") (quoting *Rosenburg v. Comm'r of Soc. Sec.*, No. 6:07-cv-1510-Orl-19DAB, 2008 WL 4186988, at *12 (M.D. Fla. Sept. 8, 2008)).

In summary, the Court finds the ALJ's decision to assign great weight to Dr. Krishnamurthy's opinion is supported by substantial evidence.

---

this statement speaks to the ultimate issue before the Commissioner – whether the Claimant is disabled. Such statements are not medical opinions and not accorded any special significance. *See Williams v. Acting Comm'r of Soc. Sec.*, 649 F. App'x 1000, 1002 (11th Cir. 2016) (holding that a treating physician's opinion that a claimant was "fully disabled" was not a medical opinion, but rather a conclusory legal judgment on issues reserved to the Commissioner); SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996) ("[T]reating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance."). The second statement purportedly comes from the Claimant's physical therapist, Nancy D Figulski. The Claimant notes that Ms. Figulski opined that the Claimant has moderate limitations with walking, cannot stand more than three (3) hours, and has severe limitations with squatting and kneeling. (R. 653). These limitations, however, appear in the subjective portion of the treatment record (*Id*.) and, therefore, appear to be from the Claimant, not Ms. Figulski. As such, the Claimant has not shown that Ms. Figulski offered opinions inconsistent with those from Dr. Krishnamurthy.

### B. Credibility

The Claimant next contends that the ALJ made a boilerplate credibility determination and did not provide any specific reasons supporting her determination that the Claimant's statements concerning the intensity, persistence, and limiting effects of her symptoms, particularly her fibromyalgia, are "not entirely consistent with the medical evidence and other evidence in the record[.]" (Doc. 25 at 43-49). The Claimant also contends that the record supports her allegations. (*Id*. at 45-46). For these reasons, the Claimant argues that the ALJ's credibility determination is both legally erroneous and not supported by substantial evidence. The Court disagrees.

A claimant may establish "disability through his own testimony of pain or other subjective symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). A claimant seeking to establish disability through his or her own testimony must show:

> (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). If the ALJ determines that the claimant has a medically determinable impairment that could reasonably produce the claimant's alleged pain or other symptoms, the ALJ must then evaluate the extent to which the intensity and persistence of those symptoms limit the claimant's ability to work. 20 C.F.R. §§ 404.1529(c)(1), 416929(c)(1). In doing so, the ALJ considers a variety of evidence, including the claimant's history, the medical records and laboratory findings, the claimant's statements, medical source opinions, and other evidence of how the pain affects the claimant's daily activities and ability to work. *Id*. at §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3). "If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so." *Foote*, 67 F.3d at 1561-62. The Court will not disturb a clearly articulated credibility finding that is supported by

substantial evidence. *Id*. at 1562.

> The ALJ summarized the Claimant's allegations/testimony as follows:
>
> The claimant alleged that she is unable to manage the demands of work-related activity on a regular and full time basis. At the hearing, the claimant testified that she has difficulty with prolonged standing and walking due to foot pain and difficulty wearing closed-toe shoes due to pressure on her feet. She described standing for two hours before needing to sit while at work, but also testified that she is on her feet for approximately 45 minutes at one time. She testified she can walk for 45-60 minutes before she begins to limp; she described walking as easier than standing. She stated that her sciatic nerve hurts with activities involving bending. The claimant stated that she could sit for 45-60 minutes at a time, but she leans to the side. She endorsed side effects of medication including drowsiness and fatigue. She described difficulty looking down, such as when using a computer or folding items on a table.

(R. 20).[8] Following this summary, the ALJ found that the Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. 20-21). The ALJ proceeded to provide specific reasons in support of her credibility determination, stating:

> The claimant remained capable of performing a range of work consistent with the light exertional level. Treatment notes, clinical examinations, and the medical evidence of record in its entirety provides support for the opinions from the state agency consultants Dr. Krishnamurthy, who opined the claimant could perform work generally consistent with the light exertional level. Additional treatment notes were admitted to the record after Dr. Krishnamurthy performed his review, which showed the development of a seizure-like disorder (Exhibit 23F). The residual functional capacity includes additional restrictions that address the claimant's seizure-like disorder, as well as her continued complaints of pain and persuasive testimony regarding her need to change positions. The record overall, however, does not provide support for the full extent of the claimant's allegations regarding the nature and degree of her limitations.
>
> Looking to the medical evidence of record, the claimant alleged an onset date of December 31, 2015. Notes from vocational rehabilitation show that the claimant transitioned from working an average of 27 hours per week in 2015 to nine hours per week in January 2016 due to her symptoms (Exhibit 16F, pp. 4-5). Clinical

---

[8] The Claimant does not challenge accuracy of this summary.

> examinations consistently showed that the claimant presented with limited range of motion and tenderness to palpation of the left shoulder and throughout all areas of the spine (Exhibits 4F, 8F). She engaged in treatment with her primary care provider, as well as specialists including physical therapists, a podiatrist, a rheumatologist, a neurologist, and an orthopedist. While she continued to present with signs and symptoms consistent with her underlying conditions, clinical examinations do not document deficits or abnormalities fully consistent with the claimant's allegations of limitation. As further discussed below, despite her limited range of motion and tenderness, she did not present with strength deficits, gait abnormalities, or signs of poor endurance. She also remained capable of performing a part-time job consistently, despite the related symptom aggravation, in addition to her daily activities.

(R. 21). The foregoing excerpt demonstrates that the ALJ's credibility determination was not limited to the boilerplate credibility language found in most disability decisions. Instead, the ALJ provided several reasons in support of his credibility determination, including Dr. Krishnamurthy's opinion, the lack or limited observations of strength deficits, gait abnormalities, or signs of poor endurance, and the Claimant's ability to consistently perform part-time work. (*Id.*). Considering these reasons, the Claimant's argument challenging the sufficiency of the ALJ's credibility determination is unpersuasive.

The Claimant alternatively challenges several of those reasons as being insufficient to support the credibility determination. First, the Claimant argues that physical therapy records from Ms. Figulski contradict the ALJ's finding that the Claimant "did not present with strength deficits, gait abnormalities, or signs of poor endurance." (Doc. 25 at 46). While Ms. Figulski stated that the Claimant did not reach all of her goals, her objective evaluation of the Claimant upon discharge shows that she improved her ankle strength and gait. (R. 655).[9] This improvement is demonstrated in other contemporaneous records, which contained no objective findings of strength deficits, gait abnormalities, or signs of poor endurance. (*See, e.g.*, R. 657, 659, 661, 672). The

---

[9] The Claimant again miscredits her subjective limitations with sitting, standing, walking, and squatting/kneeling as an opinion from Ms. Figulski. (Doc. 25 at 46 (citing R. 653)).

Court therefore finds the ALJ's first challenged reason is supported by substantial evidence.

The Claimant also challenges the ALJ's reliance on the Claimant's performance of part-time work, arguing that the performance of such work does not support a finding that she can perform full time work. (Doc. 25 at 48). The ALJ is permitted to consider the Claimant's work history following the alleged onset date, because it may be probative of the Claimant's true abilities. *See, e.g., O'Donnell v. Colvin*, No. 8:13-cv-2958-T-33TGW, 2015 WL 328244, at *6 (M.D. Fla. Jan. 23, 2015) ("The law judge could reasonably conclude that the plaintiff's part-time job supports a conclusion that the plaintiff could engage in light work."); *McEachron v. Colvin*, No. 8:15-cv-1263-T-JRK, 2016 WL 4751714, at *6 (M.D. Fla. Sept. 13, 2016) ("[T]he ALJ appropriately considered Plaintiff's part-time waitressing work in assessing Plaintiff's RFC and in finding her capable of performing other work in the national economy."). The Claimant's performance of part-time work can reasonably be viewed as being inconsistent with the severity of her alleged limitations and supportive of her ability to perform full-time work. *Id*. Further, the Claimant's part time work was not the only reason supporting the ALJ's credibility determination. As discussed above, the ALJ also found the Claimant's allegations inconsistent with Dr. Krishnamurthy's opinion and the lack or limited observations of strength deficits, gait abnormalities, or poor endurance. Together, these reasons, which are supported by substantial evidence, can reasonably be viewed as being inconsistent with the Claimant's allegations concerning her limitations and the severity of those limitations.

The Claimant also argues that the ALJ failed to comply with SSR 12-2p when considering the limitations caused by her fibromyalgia. (Doc. 25 at 46 (citing *Davis v. Astrue*, 287 F. App'x 748 (11th Cir. 2008); *Reliford v. Barnhart*, 444 F. Supp. 2d 1182 (N.D. Ala Aug. 2, 2006); *Harrison v. Barnhart*, 346 F. Supp. 2d 1188 (N.D. Ala Nov. 17, 2004))). The record does not support the

Claimant's position. SSR 12-2p provides that "[f]or a person with [fibromyalgia], we will consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have 'bad days and good days.'" 2012 WL 3104869 at *6. The ALJ complied with SSR 12-2p by considering the Claimant's longitudinal record, including records relating to the Claimant's fibromyalgia. (R. 21-23). Further, and perhaps more importantly, the ALJ accounted for the pain caused by the Claimant's fibromyalgia and other impairments by including a type of sit/stand option, something the Claimant testified as doing at work to relieve her pain (R. 49). (R. 21 ("The residual functional capacity includes restrictions that address . . . her continued complaints of pain and persuasive testimony regarding her need to change positions.")).[10] For these reasons, the Court finds the ALJ properly considered the Claimant's fibromyalgia.

Finally, the Claimant contends that the evidence of record supports her allegations/testimony. (Doc. 25 at 45-46). Specifically, the Claimant points to evidence from Dr. St. Mary and Ms. Figulski. (*Id*. (citing R. 458, 647-56)). Even if this evidence supported the Claimant's allegations (and the Court is not saying that it does), the ALJ's credibility determination would still stand under the applicable standard. The question is not whether there is evidence to support the Claimant's allegations, but whether there is substantial evidence to support the ALJ's credibility determination. *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) ("Even if the evidence preponderates against the Commissioner's factual findings, the Court must affirm if the decision reached is supported by substantial evidence."); *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) (when reviewing the ALJ's credibility determination "[t]he question is not . . . whether ALJ could have reasonably

---

[10] The Claimant does not challenge the ALJ's decision to include a sit/stand option to account for the pain she discussed at the hearing (*See* R. 49).

credited his testimony, but whether the ALJ was clearly wrong to discredit it."). As discussed above, the ALJ's credibility determination is supported by substantial evidence and, therefore, the presence of evidence that preponderates against her credibility determination is not grounds for reversal.

In summary, the Court finds the ALJ provided specific reasons in support of her credibility determination and that those reasons are supported by substantial evidence. Accordingly, the Court may not disturb the ALJ's credibility determination. *Foote*, 67 F.3d at 1562.

**V.     Conclusion**

Accordingly, it is **ORDERED** that:

1. The Commissioner's final decision is **AFFIRMED**.

2. The Clerk is **DIRECTED** to enter judgment in favor of the Commissioner and against the Claimant, and to close the case.

**DONE** and **ORDERED** in Orlando, Florida on March 23, 2021.

_Leslie R. Hoffman_
LESLIE R. HOFFMAN
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

The Honorable Tracy LaChance
Administrative Law Judge
Office of Hearings Operations
Suite 303
1750 Elm Street
Manchester, NH 03104-2908